UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JIM A. MERON,<br><br>Defendant. | No. 2:18-cr-0209-KJM<br><br><br><br>ORDER |

   Defendant renews his request for an order granting early release from confinement subject to the sentence this court imposed and seeks admission instead to home confinement, under 18 U.S.C. § 3582(c). Defendant makes this motion in light of the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and, as he argues, to him in particular. For the following reasons, the court orders supplemental briefing on defendant's motion due to the parties' dispute over exhaustion and its potential jurisdictional ramifications.

I. BACKGROUND

   On June 17, 2019, defendant Jim Meron was sentenced to 33 months in prison followed by 36 months of supervised release on two counts of wire fraud in violation of 18 U.S.C § 1341. Sentencing Mins., ECF No. 28; Plea Agreement, ECF No. 10. Defendant is now serving his sentence at FCI Sheridan, the Federal Correctional Institution in Sheridan, Oregon. First Mot., ECF No. 36, at 3. On March 30, 2020, defendant submitted to his case manager an Inmate

Request to Staff, which the BOP, through a Mrs. Bilbrey, denied on April 21, 2020. Opp'n, ECF No. 41, at 7 (stating BOP denied the request); *id.*, Ex. B, ECF No. 371-1, at 8 (Inmate Request) (depicting handwritten denial signed by Bilbrey on April 20, 2020). On April 3, 2020, defendant filed his first motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* First Mot. The government opposed, ECF No. 37, and defendant filed a reply, ECF No. 38. The court denied the motion without prejudice, because defendant had not met the exhaustion requirement. Order, ECF No. 39.

In his renewed motion for compassionate release, filed on April 25, 2020, defendant argues he has now exhausted administrative remedies because BOP denied his March 30 Inmate Request to Staff on April 21. Mot., ECF No. 40. The government has opposed. Opp'n, ECF No. 41. Defendant replied, Reply, ECF No. 42, and also submitted a declaration from the Assistant Warden at a separate facility, FCI Miami, regarding systemwide BOP procedures regarding administrative requests, *see* Broton Decl., ECF No. 43. In response, the government has filed a sur-reply, accompanied by a request to file a sur-reply, Sur-Reply, ECF No. 44. The court grants this request, because defendant introduced new evidence on reply. *See, e.g.*, *Magic Link Garment Ltd. v. ThirdLove, Inc.*, No. 18-CV-07366-PJH, 2020 WL 1940802, at *8 n.2 (N.D. Cal. Apr. 22, 2020) (permitting sur-reply to allow party to respond to new evidence on reply, in absence of oral argument). Defendant responded to the sur-reply with an additional response, unaccompanied by any request for leave to file such a response; the court does not consider this further response as it is unwarranted additional briefing. ECF No. 45.

II.     EXHAUSTION

Defendant brings his motion for release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court to modify a sentence under certain circumstances. Under the current version of the statute, a motion for modification may be made by either the Director of the Bureau of Prisons (BOP) or by a defendant "after the defendant has fully exhausted all administrative rights to appeal or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," 18 U.S.C. § 3582(c)(1)(A).

The government argues defendant has not exhausted administrative remedies, and therefore his motion must be denied. The government contends that defendant's March 30, 2020 "Inmate Request to Staff," "did not contain sufficient information to constitute a properly submitted Compassionate Release request to BOP" so as to trigger a 30-day timeline for exhaustion and defendant has not exhausted additional available appeals. Opp'n at 11; *see* Inmate Request to Staff. Specifically, the government argues that defendant's Inmate Request to Staff does not trigger the statutory administrative remedies exhaustion period, because it is not a formal request for Reduction in Sentence, and does not "contain sufficient information to constitute a properly submitted Compassionate Release/Reduction in Sentence request to BOP," as required under BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).[1] Opp'n at 11 (citing BOP Program Statement 5050.50 (January 17, 2019)[2]). The government takes the position that defendant's Inmate Request to Staff should not be construed as a request for compassionate release because it "made no mention of permanent reduction of his sentence under Section 3582(c)" but rather requests consideration for "priority home confinement as directed by A.G. Barr and the Care [sic] act." *Id.* (citing Opp'n, Ex. 2, ECF No. 41-1).

While on the one hand, defendant argues exhaustion should be waived, on the other hand, defendant argues he has met the statute's exhaustion requirements. To that end, defendant argues that his Inmate Request to staff should be considered a Reduction in Sentence request, because "Meron's Inmate Request to Staff is processed by the BOP as a [request for] permanent reduction of his sentence under Section 3582(c)" and the BOP "indicated that they had sufficient information to constitute a properly submitted Compassionate Release/Reduction in

---

[1] In relevant part, 18 U.S.C. § 4205(g), which applies to defendants sentenced before the effective date of § 3582(c), allows a sentencing court, on motion of the Bureau of Prisons, to order an inmate with a minimum term sentence immediately eligible for parole by reducing the minimum term of the sentence to time served. *See* BOP Program Statement 5050.50 § 571.60; *United States v. Lika*, No. 84-CR-499 (CS), 2020 WL 2766049, at *1 (S.D.N.Y. May 28, 2020).

[2] https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

3

1 Sentence request to BOP." Reply at 2 (apparently relying on BOP Program Statement 5050.50).
2 Thus, defendant argues, "exhaustion has elapsed April 21st, 2020 when he was denied." Mot. at
3 6.
4         In support of this argument, defendant has submitted a declaration from Jennifer
5 Broton, Associate Warden at FCI Miami, which explains BOP's systemwide procedure for
6 processing home confinement and compassionate release requests. Broton Decl. Defendant
7 points to paragraph 17 of the declaration, which reads:

> Inmates do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. While all inmates are being reviewed for suitability for home confinement, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager.

12 Broton Decl. ¶ 17. Defendant appears to argue that this paragraph supports a conclusion that
13 defendant's only avenue to pursue release to home confinement is to submit a request to his or her
14 case manager, which defendant here has done. *See* Reply at 2.
15         In its sur-reply, the government counters that defendant conflates requests for
16 "home confinement (a remedy BOP may grant or deny and for which no judicial review is
17 available)" with requests for "compassionate release (a remedy BOP may seek from a court on
18 behalf of an inmate or, that an inmate may seek from a court after exhausting his administrative
19 remedies or after 30 days from his request to the prison seeking that relief)." Sur-Reply at 2
20 (citing Broton Decl. ¶¶ 3–20 (discussing statutory basis for, and operation of, home confinement
21 requests); *id.* ¶¶ 24–25 (discussing statutory basis for, and operation of, compassionate relief
22 requests)). The government is correct that Broton's declaration does differentiate between the
23 procedure for requesting home confinement and the procedure for requesting "compassionate
24 release/reduction in sentence," Broton Decl. ¶ 24. However, that BOP processes the requests
25 differently and home confinement and compassionate release are two different remedies, does not
26 necessarily mean the court should not construe defendant's Inmate Request to Staff as sufficient
27 to trigger any exhaustion clock applicable to compassionate release requests.
28

4

The government's argument, that the Inmate Request to Staff does not contain sufficient information to be considered a request for compassionate release, is not supported by the program statement the government cites. Under the section entitled "Initiation of Request – Extraordinary or Compelling Circumstances," BOP Program Statement 5050.50 does not require the use of any form and provides:

> A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. . . . The inmate's request shall at a minimum contain the following information:
>
> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment. . . .
>
> A request for a RIS [reduction in sentence] is considered "submitted" for the purposes of 18 USC §3582 (c)(1), when received by the Warden in accordance with this section.

BOP Program Statement 5050.50 § 571.61. Defendant's Inmate Request to Staff includes the information called for by the program statement as relevant here: defendant explains his risk factors for COVID-19, his plan to reside with his wife and daughter in Granite Bay, California, his belief that this will "reduc[e] my risk of contracting Covid-10," and his plan to "home school my daughter while my wife works." Inmate Request at 8. Otherwise, in substance, defendant's Inmate Request to Staff is, in all functional respects, a request for compassionate release. Defendant apparently submitted his request on his own, without counsel at the time. *See* Reply at 2 ("Jim Meron brought a motion for compassionate release . . . ."); *see also* Inmate Request to Staff (handwritten request by "Jim Meron"). This fact supports a liberal construction of his submission. *Cf. United States v. Coker*, 2020 WL 1877800 at *4 (interpreting Inmate Request for home confinement and reduction in sentence as request for home confinement only, where such interpretation was favorable to defendant, in part because "defendant is not an attorney").

At least one other district court has considered specifically whether an inmate's request to staff requesting transfer to home confinement is sufficient to trigger the 30-day

5

1  timeline for exhaustion purposes under § 3582.  *United States v. Echevarria*, No.
2  317CR44MPSMPS, 2020 WL 2113604, at *2 (D. Conn. May 4, 2020) (finding exhaustion
3  satisfied under § 3582(c)(1)(A) where defendant "submitted an 'Inmate Request to Staff' form
4  dated [over 30 days prior], in which he requested to 'be placed in home confinement to complete
5  [his] sentence' due to his asthma and the 'COVID-19 pandemic.'").  Other court decisions appear
6  to have reached the same conclusion without spelling out their reasoning.  *See United States v.
7  Singh*, No. 2:15-CR-00015-TLN, 2020 WL 2128588, at *1 (E.D. Cal. May 5, 2020) (referring to
8  inmate request for release to home confinement as request for compassionate release); *see also
9  United States v. Moore-Brown*, No. 3:17-CR-129, 2020 WL 2306855, at *3 (M.D. Pa. May 8,
10 2020) (treating defendant's request "for compassionate release to home confinement" as request
11 for compassionate release triggering exhaustion timeline under § 3582(c)(1)(A) but ultimately
12 finding no exhaustion).
13         For these reasons, the court is inclined to construe defendant's Inmate Request to
14 Staff as a request for compassionate release, the contents of which are sufficient to trigger the 30-
15 day timeline set forth in § 3582(c)(1)(A).  However, the text of § 3582(c)(1)(A) dictates that the
16 30-day timeline begins to run "after receipt of such a request by the Warden."  Here, defendant's
17 request is addressed to and was denied by "Mrs. Bilbrey," who is not the Warden of FCI
18 Sheridan; it appears the Warden is Josias Salazar, *see United States v. Holden*, No. 3:13-CR-
19 00444-BR, 2020 WL 1673440, at *10 (D. Or. Apr. 6, 2020) (identifying Salazar as warden of FCI
20 Sheridan).  *See* Inmate Request at 8.  Neither party offers any evidence to clarify whether the
21 request was ever received by the Warden, or whether addressing the request to Mrs. Bilbrey is
22 sufficient to satisfy this requirement.  This issue appears material to the exhaustion analysis, and
23 the court concludes supplemental briefing on this issue is necessary as discussed below.
24         The government also argues there is no evidence defendant appealed BOP's denial
25 of his Inmate Request to Staff such that he has exhausted all administrative grievances.  Opp'n at
26 11.  The government does not outline what precisely is required to exhaust administrative
27 appeals, however it cites to BOP Program Statement 5050.50, *id.* at 17, which arguably expands
28 on the statutory exhaustion requirement for compassionate release motions.  *See* BOP Program

6

Statement 5050.50 § 571.63(a) (citing Administrative Remedy Program appellate procedure at section 52 subpart B, found at 28 C.F.R. § 542.10 *et seq.*, as proper method of administratively appealing request made based on § 3582(c)(1)(A) that is denied in first instance); *see also id.* § 571.63 (explaining inmate may file compassionate release request "with the sentencing court after receiving a [Central Office Administrative Remedy Appeal form] BP-11 response under subparagraph (a), the denial from the General Counsel under subparagraph (d), or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier"); 28 C.F.R. § 542.15 (directing inmates to appeal denial of an administrative request to "the appropriate Regional Director within 20 calendar days of the date the Warden signed the response," then to General Counsel of BOP). Some district courts have accepted that the exhaustion required for a court to consider a compassionate release request is in fact multi-tiered. *See Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *25 (D. Conn. May 12, 2020) (describing "multi-tiered" administrative appeals process for compassionate release request which "requires each inmate to appeal the denial by the Warden to a BOP Regional Director, followed by an appeal to the BOP General Counsel"); *United States v. Young*, No. CR14-5242RJB, 2020 WL 1673043, at *2 (W.D. Wash. Apr. 6, 2020) (finding defendant did not exhaust administrative remedies "by appeal to the Director of the Bureau of Prisons or to the Warden"); *United States v. Pinson*, No. CR H-08-283, 2020 WL 2771343, at *3 (S.D. Tex. May 28, 2020) (finding defendant had not exhausted administrative appeals where his request for compassionate release was denied by warden and he did not appeal denial). This court determines supplemental briefing is necessary to clarify the question of what steps are required for defendant to have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," given the statutory text of § 3582(c) providing in the disjunctive for exhaustion within 30 days of the Warden's receipt of an inmate's request. The briefing should address whether BOP's program statements regarding exhaustion are binding authority in this context.

1     Accordingly, the parties SHALL simultaneously submit supplemental briefing on
2 the two issues outlined above, with each brief limited to no more than 5 pages each and filed
3 within 7 days of the filed date of this order.
4     IT IS SO ORDERED.
5 DATED: June 2, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE