Case 2:18-cr-00209-KJM   Document 58   Filed 09/03/20   Page 1 of 6

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:18-cr-0209-KJM |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| JIM A. MERON, | |
| Defendant. | |

        Defendant Jim Meron moves for an order granting early release from confinement under the sentence of this court and admission to home confinement, under 18 U.S.C. § 3582(c). Meron makes this motion in light of the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and, as he argues, to him in particular. For the following reasons, the court GRANTS Meron's renewed motion.

I.    BACKGROUND

        On June 17, 2019, defendant Jim Meron was sentenced to 33-months in prison followed by 36 months of supervised release on two counts of wire fraud in violation of 18 U.S.C § 1341. Mins. of Sentencing, ECF No. 28; Judgment, ECF No. 31. Meron is now serving his sentence at the Federal Correctional Institution in Sheridan, Oregon (FCI Sheridan). Mot., ECF No. 50, at 3. He is projected to be released on December 28, 2021, assuming his good time credits are applied. ECF No. 41-1 at 2. On June 29, 2020, Meron submitted a request for

1

compassionate release to the Warden at FCI Sheridan, which is still pending. Opp'n at 11 (citing ECF No. 50, Ex. A). On April 3, 2020, defendant filed his first motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 36. The government opposed, ECF No. 37, and defendant filed a reply, ECF No. 38. The court denied the motion without prejudice, because defendant had not met the exhaustion requirement. ECF No. 39.

On April 25, 2020, Meron renewed his motion. ECF No. 40. After considering supplemental briefing from the parties, the court again denied the motion based on a failure to exhaust. ECF No. 49.

Defendant's motion for compassionate release, renewed for a second time, is again before the court after defendant filed it on August 1, 2020. Mot., ECF No. 50. The government opposes, Opp'n, ECF No. 55, and defendant has replied, Reply, ECF No. 57.

Defendant Meron is a testicular cancer survivor and suffers from psoriasis, for which he takes medications, such as corticosteroids, that he asserts suppress his immune system. *See* Opp'n at 9 (citing ECF No. 36 at 3; ECF No. 36-1). Meron's cancer has been in remission since July 2011, after a successful orchiectomy to remove his right testicle; he continues to take medication for erectile dysfunction. *Id.* (citing Presentence Investigation Report ("PSR") ¶¶ 57, 59–60, ECF No. 23). Meron argues his past and ongoing health issues place him at a heightened risk of contracting COVID-19. Mot. at 3, 9. He requests immediate release to home confinement, to shelter with his wife in their Granite Bay home. Mot. at 6.

II.     EXHAUSTION

As a threshold issue, the government concedes that Meron has satisfied the statutory exhaustion requirement in 18 U.S.C. § 3582(c)(1). Opp'n at 11. Accordingly, the court analyzes the merits of Meron's motion below.

III.    "EXTRAORDINARY AND COMPELLING" REASONS

Meron argues that his history of cancer, low testosterone levels and use of corticosteroids for his psoriasis put him at high risk for serious complications if he is infected with COVID-19. *See generally* Reply. As it has previously, the court takes judicial notice of the CDC's guidelines for COVID-19 risk factors. *See United States v. Pickard*, No. 2:11-CR-00449-

2

KJM, 2020 WL 4227510, at *4 n.4 (E.D. Cal. July 23, 2020).  Currently, the CDC advises that: "At this time, it is not known whether having a history of cancer increases your risk."  *See* Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19)— People with Certain Medical Conditions*.[1]  However, it also advises that having a weakened immune system may increase your risk of severe illness from COVID-1 and "treatments can cause a person to be immunocompromised or have a weakened immune system" with one example of treatments being "prolonged use of corticosteroids"  *Id.*  The guidelines do not say anything about testosterone levels.  Accordingly, the court focuses primarily on Meron's psoriasis and use of corticosteroids.

In support of his argument, Meron relies primarily on two letters from physicians: a letter from Dr. Scott M. Taylor, Taylor Decl., ECF No. 36-1, and a letter from Dr. Roger Ang, Ang Decl., ECF No. 38-4.  Dr. Taylor, who is not Meron's treating physician nor a BOP physician but an orthopedic surgeon, discusses Meron's psoriasis and previous cancer, notes his corticosteroid use,[2] and explains "there is no reliable evidence at this time that patients on biologics[3] are at a meaningful increased risk of COVID19 – although it is reasonable that future studies will determine this."  Taylor Decl. at 1.  Nonetheless, he concludes Meron "is at increased risk of severe complications of his major chronic diseases and potential infection from COVID19 in his current environment."  *Id.* at 1–2.  Dr. Ang, Meron's current treating physician at Sutter Medical Foundation, similarly states, "It is my medical opinion that [Meron] is considered at a higher risk of having severe symptoms if he is infected with COVID-19 due to his medical condition/s."  Ang Decl. at 1.

---

[1] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[2] The court notes that, in her declaration, Oxana Gaertner, Meron's wife, states "Jim stopped using these medications when he went to prison, 7.5 months ago, although he has requested said medications."  Gaertner Decl. ¶ 4, ECF No. 38-2.  Gaertner does state Meron has used several corticosteroids for "40+ years."  *Id.* ¶ 3.  To the extent this contradicts either of the doctors' letters, the court weighs the doctors' statements more than Gaertner's, who may be unaware of her husband's medical regimen while he is incarcerated.

[3] Nothing in the record elaborates on the meaning of "biologics."

The government challenges the appropriate weight to assign these declarations, pointing out that Dr. Taylor concedes "there is no reliable evidence" that patients taking "biologics" "are at a meaningful increased risk of COVID19," and Dr. Ang offered no comment at all on Meron's psoriasis or treatment. Opp'n at 19. The government does not offer any declarations to rebut the doctors' conclusions, nor has it requested an evidentiary hearing to cross-examine Drs. Taylor and Ang. Accordingly, the court gives the doctors' letters weight in its analysis.

After careful review of Meron's medical records[4] and the doctors' declarations, in light of the CDC's guidelines, particularly with respect to the effect of immunosuppressant medications, the court concludes Meron is at a high risk of developing severe symptoms if he contracts COVID-19. *United States Nemec*, No. 16-CR-00134-SI-1, 2020 WL 4547158, at *2 (N.D. Cal. Aug. 6, 2020) (finding "extraordinary and compelling reasons" existed where defendant was not able to control his arthritis and psoriasis without the use of immunosuppressing drugs "that would render him particularly vulnerable to COVID-19"); *see also United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (noting persons with "severe forms of psoriasis requiring immunosuppressive therapies may be at greater risk of infection" from COVID-19 and finding extraordinary and compelling reasons for release).

The court also finds Meron is unlikely to be able to protect himself from contracting COVID-19 while incarcerated at FCI-Sheridan, which Meron describes as manifesting crowded conditions. The court recognizes the likelihood that "any introduction of [] coronavirus into the prison population will be highly likely to rapidly result in community spread." Mot. at 4; Sawyer Decl. ¶¶ 5–9, ECF No. 36 (describing crowded conditions at FCI Sheridan). BOP is currently reporting four positive cases of coronavirus at FCI Sheridan. *See*

---

[4] The court notes Meron's medical records do not state he has "severe" psoriasis, but do corroborate Dr. Taylor's report that he does suffer from psoriasis at some level. *See, e.g.*, ECF No. 34 (sealed) at 13 (2011 report by Dr. Ang listing psoriasis under "Past Medical History"), 62 (2011 report listing PSORIASIS= MINOR BREAKOUTS under "Past/Present Medical Problems"). The fact that the option "compromised immune status [from] long-term corticosteroid use" is not checked in one of Meron's evaluations from 2011 is insufficient to undermine the doctors' conclusions, as the government argues. Opp'n at 10 (citing ECF No. 34 at 25).

Bureau of Prisons (BOP), *COVID-19 Cases* (updated daily), https://www.bop.gov/coronavirus/. The government argues that BOP is taking sufficient safety precautions to prevent the spread of COVID-19 within all BOP prisons. Opp'n at 11 (citing Federal Bureau of Prisons, *Correcting Myths About BOP and COVID-19* at 1[5]). The court, however, analyzed similar arguments regarding FCI Sheridan in *United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794 (E.D. Cal. July 7, 2020), *amended by* ECF No. 71, at a time when there were no reported cases of COVID-19 there, and found there was a "likelihood of COVID-19 infections spreading through FCI Sheridan and a notable absence of comprehensive information on BOP's COVID-19 management plan for inmates with defendant's comorbidity factors[.]" *Id.,* at *6. Here, defendant's comorbidity factors are different and there are now four cases of COVID-19 reported at FCI-Sheridan; otherwise, the record here is essentially the same as in *Bradley*. The court makes the same finding here. *See id.*

In light of the conditions at FCI Sheridan, defendant is at high risk of contracting COVID-19 and defendant's medical conditions put him at high risk of suffering severe medical consequences if that happens, *see* Taylor Decl.; Ang Decl. Taken together, the court finds this suffices to show an "extraordinary and compelling reason" to grant defendant compassionate release.

IV.   SENTENCING GUIDELINES

The Sentencing Guidelines instruct that "the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A).

Defendant's crime is a serious one, but it is nonviolent. *See* PSR ¶¶ 4–22 (describing offense). Assuming his good time credits are applied, Meron has served

---

[5] Available at: https://www.bop.gov/coronavirus/docs/correcting_myths_and_ misinformation_bop_covid19.pdf.

approximately 43 percent of his sentence. *See* ECF No. 41-1 at 2; Opp'n at 9. The fact that nearly 16 months remain on defendant's sentence with good time credits weighs against granting compassionate release. However, this is outweighed by defendant's clean criminal history prior to the instant conviction, *see* PSR ¶¶ 40–41, and apparently good behavior while in prison, *see* Opp'n at 15–16 (discussing Meron's "purported rehabilitation").

It appears Meron has the support of his wife, Oxana B. Gaertner, and can shelter in place in their home in Granite Bay, California upon release. *See* Mot. at 8. He expresses his desire to work from home and homeschool his daughter while his wife works. Inmate Req., ECF No. 50-1. At the court's request, the U.S. Probation Office has assessed Meron's proposed residence upon release and deemed it appropriate and suitable for the application of location monitoring.

The court has reviewed all the factors to be considered in imposing a sentence, 18 U.S.C. § 3553(a), and finds no factor or combination of factors precludes the requested remedy here. In light of the foregoing, the court also finds defendant does not present a risk of danger to the community as articulated in 18 U.S.C. § 3142(g).

Accordingly, the court exercises its discretion to reduce defendant's sentence as described below, because extraordinary and compelling reasons warrant such a reduction.

V.    CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is GRANTED as follows:

The court modifies defendant's sentence of incarceration to time served, followed by the original term of 36 months of supervised release with the added special condition that, for 6 months, defendant be subject to home confinement with defendant bearing the attendant cost of location monitoring. All other previously imposed conditions of supervised release remain in effect. *See United States v. Lee*, 445 F. Supp. 3d 172, 274–75 (N.D. Cal. May 15, 2020).

This order resolves ECF No. 50.

IT IS SO ORDERED.

DATED: September 2, 2020.

CHIEF UNITED STATES DISTRICT JUDGE